**FILED**

Date: 03/21/2024 @ 3:05 PM via email

Clerk, U.S. Bankruptcy
Orlando Division

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| Global Consulting, LLC | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. 6:24-bk-00353-GER |
| | ) | |
| _____ | ) | |

### AMENDED MOTION OF CREDITOR MUSTAPHA BOUJANA TO

### DISMISS THE DEBTOR'S CHAPTER 11 CASE

---

**NOTICE OF OPPORTUNITY TO**
**OBJECT AND REQUEST FOR HEARING**

If you object to the relief requested in this paper you must file a response with the Clerk of Court at George C. Young Federal Courthouse, 400 W. Washington Street, Suite 5100, Orlando, FL 32801 within 21 days from the date of the attached proof of service, plus an additional three days if this paper was served on any party by U.S. Mail.

If you file and serve a response within the time permitted, the Court will either notify you of a hearing date or the Court will consider the response and grant or deny the relief requested in this paper without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, and the Court may grant or deny the relief requested without further notice or hearing.

**You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated if you do not timely file and serve a response.**

---

Creditor, Mustapha Boujana, *pro se*, hereby files this motion (the "Motion") for entry of an order, pursuant to Sections 105(a) and 1112(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), dismissing the Chapter 11 case of the above-captioned debtor (the "Debtor") and debtor in possession. In support

of this Motion, Creditor respectfully represents as follows:

## **Preliminary Statement**

1.    The U.S. Congress has recently enacted the 11 U.S. Code Subchapter V to help **honest and hard-working** individuals and small businesses, who are in financial distress, mainly due to the COVID-19 pandemic, to stay in business, financially reorganize, and save employees from losing their jobs.

2.    While it is true that not every bankruptcy is filed in bad faith, in this case, the Debtor has commenced this Chapter 11 case solely and unequivocally in bad faith to avoid facing already scheduled deposition and trial by jury.

3.    The Debtor (Global) does not fit into this category. It does not have, nor ever had, any employees in the U.S. or elsewhere, and the alleged financial stress that Mr. Alfonsi grossly and unashamedly imputes to the U.S. government, is the result of Global's incompetence, fraud, dishonesty, illegal taking (theft) of others monies and gross mismanagement of the affairs of the debtor.

4.    This Honorable Court, the US Trustee Office, and the Trustee should give special attention to this case by making a thorough audit of Global's finances and tax records since its inception in 2005 to this date, and might as well look at the owners' finances, since the Debtor appears to be an "Alter Ego" of the Alfonsis (Husband and Wife) to enrich themselves by robbing honest working individuals through a sophisticated scheme of fraud and more likely "kickbacks": in no country in the world, according to public/government and state contracting laws, a small business with no previous experience in the field, no assets, no employees and with a declared capital of $2,500.$^{00}$

could have obtained <u>consecutive yearly multimillion dollars contract</u>, since at least 2010 until 2015.

5.    By way of example, for the period between 02/03/2014 and 11/30/2015, the Debtor was granted, by PDVSA, a contract (No. 4600054083) with a total amount of US $8,401,048.[23] of which it has billed at least US $ 5,630,754.[85] and opted not to pay its contractors: An estimated amount of US $950,000.00 would have sufficed to pay all the Five (5) unsecured creditors in full.

6.    Instead, Global converted those billed amounts to its shareholders' (the Alfonsis) benefit acquiring real estate valued today at more than 2.5 million dollars, and alleging that Global has no assets except for an account receivable.

7.    Any Plan of Reorganization by the Debtor lacks legal validity or merit as it is intended to provide a "clean slate" for renewal of the tortuous business practices that have been fully exposed in the aforementioned civil litigation initiated by Mr. Boujana in state court, under Florida State Law.

8.    Based on the foregoing, the Movant asks this Court to dismiss the Debtor's Petition, stay the requested relief, and impose sanctions on the Debtor requiring him to pay the Movant's costs and associated expenses.

## <u>Jurisdiction And Venue</u>

9.    This Court has jurisdiction over the Motion pursuant to <u>28 U.S.C. §§ 157</u> and <u>1334</u>. This is a core proceeding pursuant to <u>28 U.S.C. § 157(b)</u>. Venue is proper in this Court pursuant to <u>28 U.S.C. §§ 1408</u> and <u>1409</u> and <u>Local Rule 1071-1</u> of the United States Bankruptcy Court for the Middle District of Florida.

## Statement of Facts

10. On January 25th, 2024 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 11, Subchapter V of the Bankruptcy Code. The Debtor is operating its businesses and managing its property as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

11. The movant (Creditor) is a professional Geologist who worked for Global ("The Debtor") under a separate Independent Contractor Agreement.

12. The Debtor is a Limited Liability Company (LLC) incorporated in 2005 in Orange County Florida, by Mr. Pedro Alfonsi and Mrs. Flor Cabello Alfonsi (The "Alfonsis"), husband and wife.

13. The Debtor does not have, nor had, any physical office either as a property or as a lease/rent, only P.O. Boxes to receive correspondence. Since its incorporation it has operated from the Alfonsis' home. The recent and declared address since 2014 is a UPS Store P.O. Box located at 13506 Summerport Village Pkwy, Suite 409 Windermere, FL 34786 USA.

14. The Debtor does not have, nor had, any known employees in the United States of America, or elsewhere. The person who managed certain Debtor's affairs in Venezuela, was Mr. Jose Cabello, who happens to be Mr. Alfonsi's brother-in-law and brother of Mrs. Alfonsi.

15. The only known client to the Debtor is the Venezuelan state-owned petroleum company known as PDVSA Petróleo, S.A. ("PDVSA"). During the 341-meeting held on February 26th, 2024, Mr. Alfonsi made an **odd statement** saying that Global was incorporated only to work for PDVSA.

4

16.    The debtor has been providing highly qualified professionals to work for PDVSA under contracts since 2012 or earlier. The contract for all creditors is essentially the same with a daily rate of around Three Thousand Dollars ($3,000.⁰⁰) charged by Global to PDVSA plus reimbursement of approved contractor expenses.

17.    In 2014 and 2015, the Debtor managed the contract of at least seven (7) professionals. An estimated total lump sum for Global in one year of work of the 7 professionals would have been around 4.5 million dollars. These estimates are conservative (see item 5 above with the exact amounts: total lumpsum and total billed amounts).

18.    The estimated gross benefit for the Debtor in one year would have been around 50 to 55% of the 4.5 million, if not more.

19.    By the end of the year 2014, Mr. and Mrs. Alfonsi (the "Alfonsis") who are Global's Shareholders, have acquired a home in the estimated amount of Nine Hundred Thousand Dollars ($900,000.⁰⁰) which is valued as of today around 2 million Dollars ($2,000,000.⁰⁰). And by the end of the year 2018, the Alfonsis acquired a second house for investment for an estimated amount of Three Hundred Forty Thousand Dollars ($340,000.⁰⁰), actually valued at a sale price of Five Hundred Eighty Thousand Dollars ($580,000.⁰⁰) and which has been sold recently on 03/06/24 at Five Hundred Sixty-Four Thousand Dollars ($564,000.⁰⁰), according to Zillow.com.

20.    It is clear that the Alfonsis have converted the monies produced by Global (the Debtor) for their sole benefit and use while not paying Creditor for his work and misappropriating his honest earned monies. The Alfonsis have willfully committed fraudulent and tortuous actions.

5

21.     The Alfonsis are relying on the doctrine of entity separateness of the LLC; however, it appears that Global has been formed as a cover to allow shareholders or managing members to escape personal liability for misconduct. Global has been used to promote the fraudulent, unjust, and illegal taking of monies owed to contractors. Global, and its Managers Members have converted and concealed assets to avoid payments to creditors.

22.     The fraudulent scheme is based on the fact that the contractors are from different countries in the world, the Client is located in Venezuela and the Debtor is located in Florida, USA. The Debtor has been betting on the ignorance of the US law by the contractors, and mostly the hardship or almost the impossibility for them to initiate a lawsuit in the USA, while waiting for the "Statute of Limitation" to take effect, hence being legally absolved of any liability and his fraudulent performance and civil theft.

## **Arguments**

23.     According to the U.S. Small Business Administration, "Small businesses are the lifeblood of the U.S. economy: they create two-thirds of new jobs and drive U.S. innovation and competitiveness...[accounting] for 44[%] of U.S. economic activity." Hence, Chapter 11, Subchapter V has been enacted to help **honest** businessmen facing financial distress, mostly due to the COVID-19 Pandemic. This is not the case here since Global (the Debtor) has not created any new jobs in the U.S., and its whole activity has been in Venezuela, providing professionals to its Client under an IC Agreement, and egregiously committing tortuous actions and illegally taking others' properties.

24.    A voluntarily filed Chapter 11 petition is subject to dismissal under 11 U.S.C.A. § 1112 if "not filed in good faith." *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988).

25.    The good faith requirement is rooted in equity and intended to prevent abuse of the Chapter 11 process. *Matter of Little Creek Dev. Co.*, 779 F.2d 1068 (5th Cir. 1986). "A good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their equitable weapons...available 14 | IN THE NOW "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." See *Phoenix Piccadilly, Ltd. V. Life Ins. Co. of Virginia (In re Phoenix Piccadilly, Ltd.*), 849 F.2d 1393, 1394 (11th Cir. 1988) (affirming dismissal of chapter 11 case filed by owner of apartment complex that was subject to foreclosure action filed by secured creditors prior to bankruptcy filing). See also *State St. Houses, Inc. v. New York State Urban Dev. Corp. (In re State St. Houses, Inc.*), 356 F.3d 1345, 1346-47 (11th Cir. 2004) (same).

26.    Courts have recognized as indicia of bad faith: (a) lack of financial distress of the debtor, (b) few non-insider unsecured creditors, (c) use of Chapter 11 to resolve pre-petition two-party disputes in state court, and (d) timing of a petition that evidences its primary use as a litigation tactic. See *In re Serfass,* 325 B.R. 901, 905–06 (Bankr. M.D. Fla. 2005), *In re Moog*, 159 B.R. 357, 361 (Bankr. S.D. Fla. 1993); *In re Punta Gorda Associates,* 143 B.R. 281, 283–84 (Bankr. M.D. Fla. 1992); *In re On the Ocean, Inc.,* 16-16204-BKC-RBR, 2016 WL 8539791, at *2 (Bankr. S.D. Fla. June 6, 2016). The Debtor

27.    Here, the Debtor is not in financial distress and in this case fills all the

four (4) boxes.:

a) Debtor has been lying to Creditor, who happens to be a Plaintiff in the associated Adversary Proceeding (Case No. 6:24-ap-00005), by misrepresenting that Global, has no assets, has been inactive for four (4) years (2018, 2019, 2020 and 2021), and was unable to afford a lawyer. Now Global has been represented by two Lawyers from a Moran-Kidd Law Firm and when unable to get a free pass and on the brinks of being judged in State Court, hired a third lawyer from another Law Firm to help shield Global through a Legal Mechanism that is in place to help <u>HONEST</u> small businesses (Subchapter V Relief of Chapter 11). Now, Global and its Principal have three (3) lawyers from two (2) different law firms and has spent more than US $120,000.$^{00}$ as per now.

b) Debtor has declared not having any secured creditors and only five non-insider unsecured creditors, to which it intends to dispute their debt and maybe reach a discharge alleging "Statute of Limitations", except for this Creditor, Mr. Boujana, who has timely initiated a lawsuit against the Debtor and its Principal.

c) Precisely, Debtor is using Chapter 11 to resolve pre-petition two-party disputes in state court, and

d) The timing of the petition evidences its primary use as a litigation tactic. The Debtor is a party to a lawsuit in State Court, and only 2 to 3 weeks of a scheduled Jury Trial and hours before being deposed, the Debtor petitioned this court protection. The debtor's petition does not serve a valid bankruptcy purpose under Code § 1112(b) and was filed in bad faith merely to obtain a tactical litigation advantage.

28.    Additionally, Courts do not generally condone the use of Chapter 11 to resolve two-party disputes in the bankruptcy court when such litigation is still pending in a non-bankruptcy forum before the commencement of the case. *In re Serfass*, 325 B.R. at 905–06. <u>Chapter 11 was never intended to be used as a fist in a two-party bout.</u> *In re Moog*, 159 B.R. at 362 citing *In re HBA E., Inc.*, 87 B.R. 248,

8

260 (Bankr. E.D.N.Y. 1988). One court has found that a bankruptcy case should be dismissed when it "involves nothing more than a two-party dispute." *Matter of Indian Rocks Landscaping of Indian Rocks Beach, Inc.,* 77 B.R. 909, 911 (Bankr. M.D. Fla. 1987). The Debtor never answered the requests of payment of any of the creditors (Personal Communication). The Debtor recognized the other creditors debts only as a strategy to benefit from the bankruptcy relief and knowingly willing to discharge their debts as per Statute of Limitations: A smart but unconscious and improper move. Filing a Chapter 11 petition merely to obtain a tactical litigation advantage is not within "the legitimate scope of the bankruptcy laws." In only to those Debtors and creditors with 'clean hands.'" *Id.*

29.     The filing of a bankruptcy in bad faith also constitutes "cause" pursuant to 11 U.S.C.A. § 362(d)(1) to terminate or lift the stay to permit a party to conclude litigation or the exercise of remedies in a non-bankruptcy court. *In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393, 1394.

30.     The same standard of bad faith that is applied to determine whether a case should be dismissed under U.S.C. § 1112(b) may also be used to determine whether there is cause to lift the stay. *Id.* However, a finding that the factors are insufficient for purposes of dismissal does not mean that they are insufficient for purposes of stay relief. *In re Dixie Broad., Inc.,* 871 F.2d 1023, 1029 (11th Cir. 1989). "If that were true, there would not be a need to ever lift a stay for bad faith, because the petition would necessarily have to be dismissed." *Id.*

31.     Although there is no specific test for determining whether a debtor has filed a petition in bad faith, courts consider factors that evidence "intent to abuse the

judicial process and the purposes of the reorganization provisions" or, in particular, factors that evidence that the petition was filed IN THE NOW | 15 relief should not be made available to an entity solely to get an upper hand in litigation against another party, nor solely to provide an alternate forum for a debtor. ***Matter of Nw. Place, Ltd.,*** 73 B.R. 978, 982 (Bankr. N.D. Ga. 1987).

32.    The timing of a Chapter 11 petition can be evidence it was filed to obtain a tactical litigation advantage. For example, in ***In re Miracle Church of God in Christ***, 119 B.R. 308, 310 (Bankr. M.D. Fla. 1990), *re SGL Carbon Corp.*, 200 F.3d at 165. The Bankruptcy provisions are intended to benefit those in <u>genuine financial distress</u>, not to be used as a mechanism to orchestrate pending litigation. ***Id***. "Courts have routinely found bad faith and dismissed cases in circumstances where debtors have filed to purposely delay a creditor's inevitable recovery of its property." ***In re On the Ocean, Inc.***, 2016 WL 8539791, at *2. Chapter 11 16 | IN THE NOW terminated lease through a bad faith bankruptcy petition. ***Id***. at 279.

33.    ***In re LTL Mgmt., LLC***, 64 F.4th 84, 111 (3d Cir. 2023), the Third Circuit held that the Debtor did not suffer immediate financial distress, and without financial distress, there is no valid bankruptcy purpose.

34.    Providing that lack of good faith permits dismissal for cause since "resort to the protection of the bankruptcy laws is not proper [when a case is filed in bad faith] because <u>there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's terminal euphoria.</u>'" ***Dropbox, Inc. v. Thru, Inc. (In re Thru, Inc.)***, BANKRUPTCY CASE NO. 17-31034-SGJ-11 (N.D. Tex. Oct. 19, 2018)

35.     The bankruptcy petition, if approved, would legitimize the illegal actions by the Debtor and its principal and give them the green light to continue to defraud others in the future while they accumulate wealth and privileges at the expense of those whom they have victimized.

### **Relief Requested**

36.     By this Motion, Creditor, Mustapha Boujana, seeks the entry of an order pursuant to Sections 105(a) and 1112(b) of the Bankruptcy Code and Bankruptcy Rule 1017 dismissing the Chapter 11 case of the Debtor, since Global Consulting, LLC and its principal have committed egregious and fraudulent conduct and gross financial mismanagement.

37.     In the alternative, a Lift of Stay and Remand to State Court is proper.

Respectfully Submitted on March 21st, 2024.

*/s/ Mustapha Boujana*
MUSTAPHA BOUJANA
Creditor, *Pro Se*
LE 14 – APT. 8, Rue Michel Ange
Racine, 21100 Casablanca, Morocco
+212 653 673473
mboujana@yahoo.com

### **CERTIFICATE OF SERVICE**

### **Proof of Service by a Non-Attorney.**

UNDER PENALTY OF PERJURY, MOVANT, who is a Creditor in the Bankruptcy Case No. **6 : 24-bk-00353-GER,** hereby certifies that on March 21st, 2024, a copy of the foregoing **AMENDED MOTION OF CREDITOR TO DISMISS THE DEBTOR'S CHAPTER 11 CASE** has been served electronically via email to:

1. Pedro Alfonsi (Owner of Debtor Global Consulting, LLC) at pedro.alfonsi@hotmail.com, 13506 Summerport Village Pkwy, Suite 409 Windermere, FL 34786 USA.

2. Kenneth D. (Chip) Herron, Debtor's Attorney at chip@herronhilllaw.com, Herron Hill

Law Group, PLLC, P.O. Box 2127 Orlando, Florida 32802

3. Mrs. Audrey M. Aleskovsky, DOJ-Ust, United States Trustee – ORL, Email: audrey.m.aleskovsky@usdoj.gov

4. Mr. L. Todd Budgen, Trustee, Email: todd@c11trustee.com

5. Jose Diaz, Creditor at ivan.diaz@essencedeparis.com, 12 Allee des Sports Verneuil Sur Seine, France

6. Raijinder Vij, Creditor at rogervij@yahoo.com, 297 Wilkins Crossing Sugar Land, TX 77479

7. Alam Lembang, Creditor at alamlembang53@gmail.com, Calea Dorobanti 102-110 Bloc D2, Apt. 107, Sector 1 Bucharest, Romania.

8. Jorge Acosta, Creditor at jeaco1@hotmail.com, Conjunto Residencial Fontana Suites, Torre A, Piso 9, Apto PH-A2, Calle Arismendi, Lecherías, Anzoátegui, Venezuela

There is no committee of creditors.

/s/ *Mustapha Boujana*
MUSTAPHA BOUJANA
Creditor, *Pro Se*