UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

GLOBAL CONSULTING, LLC,                                  Case No.: 6:24-bk-00353-GER

    Debtor.                                                            Chapter 11
_____/

# DEBTOR'S AMENDED PLAN OF REORGANIZATION

**June 7, 2024**

COUNSEL FOR THE DEBTOR

KENNETH D. HERRON, JR.
Florida Bar No. 699403
HERRON HILL LAW GROUP, PLLC
P. O. Box 2127
Orlando, Florida 32802
Telephone: (407) 648-0058
Email: chip@herronhilllaw.com
elizabeth@herronhilllaw.com

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

GLOBAL CONSULTING, LLC,            Case No.: 6:24-bk-00353-LVV

     Debtor.            Chapter 11
_____/

**DEBTOR'S AMENDED PLAN OF REORGANIZATION**

Global Consulting, LLC ("Global", "Debtor" or "Plan Proponent") proposes the following Amended Plan of Reorganization (the "Plan") pursuant to subchapter V of Chapter 11 of Title 11 of the United States Code. The Plan amends and replaces in its entirety the initial Plan of Reorganization (Doc. 60) filed by the Debtor on April 24, 2024.

**Article 1
Definitions and Rules of Construction**

A.      **Definitions**. For purposes of this Plan, the following definitions shall apply unless the context clearly requires otherwise:

1.      **Administrative Expense** shall mean a cost or expense of administration of the Chapter 11 Case allowed under §§503(b) and 507(a)(2) of the Bankruptcy Code.

2.      **Allowed** when used with respect to a Claim shall mean a Claim or Interest (a) proof of which was filed with the Bankruptcy Court on or before the Bar Date, and (i) as to which no objection has been filed by the Objection Deadline, unless such Claim or Interest is to be determined in a forum other than the Bankruptcy Court, in which case such Claim or Interest shall not become allowed until determined by Final Order of such other forum and Allowed by Final Order of the Bankruptcy Court; or (ii) as to which an objection was filed by the Objection Deadline, to the extent Allowed by a Final Order; (b) Allowed by a Final Order; or (c) listed in the Debtor's schedules filed in connection with this Chapter 11 Case and not identified as contingent, unliquidated, or disputed.

3.      **Bankruptcy Rules** mean the Federal Rules of Bankruptcy Procedure, as amended, and as supplemented by the Local Rules of Practice and Procedure of the Bankruptcy Court, as amended.

4. **Bar Date** means April 4, 2024, which is the date fixed by order of the Bankruptcy Court by which a proof of Claim or Interest must be filed against the Debtor.

5. **Claim** means

    (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

    (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

6. **Code** means The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

7. **Confirmation Order** means the order entered by the Court confirming the Plan pursuant to 11 U. S. C. §§1129 and 1191.

8. **Court** means the United States Bankruptcy Court, Middle District of Florida, Orlando Division, and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

9. **Disposable Income** shall have the same definition and meaning as the same term is defined under 11 U. S. C. §1191(d), which is the income that is received by the debtor and that is not reasonably necessary to be expended—

    (1) for—

        (A) the maintenance or support of the debtor or a dependent of the debtor; or

        (B) a domestic support obligation that first becomes payable after the date of the filing of the petition; or

    (2) for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor.

10. **Disputed** when used with respect to each claim or interest means a claim or interest that has not been allowed or disallowed by a Final Order, and as to which either: (a) a proof of claim or interest has been timely filed or deemed filed by any applicable deadline, and as to which the Debtor or another party in interest has filed an objection or request to subordinate, and such objection or request has not been withdrawn or overruled by a Final Order; or (b) no proof of claim or interest has been filed in a non-contingent and liquidated amount, and the Debtor has scheduled such claim or interest as disputed, contingent, or unliquidated.

11. **Effective Date** means the 1st day of the month following the date that is 14 days after the entry of the Confirmation Order. If, however, a stay of the Confirmation Order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. For example, if the Confirmation Order is entered on June 20, 2024, then the Effective Date would be July 1, 2024.

12. **Final Order** means an order or judgment of the Court or by any state or other federal court, or other court of competent jurisdiction, which has not have been reversed, stayed, modified or amended and the time to appeal from or to seek review or rehearing of such order shall have expired and which shall have become final in accordance with applicable law, except that the possibility a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule, may be filed with respect to such order or judgment shall not cause such order of judgment not to be a Final Order.

13. **Interest** means an issued or authorized outstanding share or shares of common stock, a warrant or warrants for the issuance of such share or shares, other stock, stock equivalents, limited partnership interest, membership interest in a limited liability company or other equity interests in the Debtor.

14. **Petition Date** means January 25, 2024, the date when the Debtor filed the voluntary petition commencing this case as a case under Subchapter V of Chapter 11.

15. **Plan** means this Chapter 11 plan, as amended in accordance with the terms hereof or modified in accordance with the Code.

16. **Projected Disposable Income** means the Debtor's Disposable Income that the Debtor projects it will receive in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the Plan.

17. **Pro Rata Share** means with respect to any distribution to the holder of a claim or interest in an impaired class under the Plan, the ratio (expressed as a percentage) of the amount of the allowed claim or interest in such class to the aggregate amount of: (a) allowed claims or interests in the class; and (b) Disputed claims or interests that would be in the class if the claim or interest was not Disputed.

18. **Rules** means: (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under Section 2075 of title 28 of the United States Code; (ii) the applicable Federal Rules of Civil Procedure, as amended and promulgated under Section 2072 of title 28 of the United States Code; (iii) the applicable Local Rules of Practice and Procedure of the Court, as amended; and (iv) any standing orders governing practice and procedure issued by the Court, each as in effect on the Petition Date, together with all amendments and modification thereto that were subsequently made applicable to this case or proceedings therein.

19. **Trustee** means L. Todd Budgen, the individual appointed as the Trustee in this case pursuant to 11 U. S. C. §1183(a).

20. **Unsecured Claim** means a claim other than: (a) a claim entitled to priority under Code §507; or (b) a secured claim.

B. **Code and Rules Definitions**. Definitions in the Code and Rules shall be applicable to the Plan unless otherwise defined in the Plan, including Code §§ 101 and 1101, and Rules 9001 and 9002.

C. **Interpretation and Construction**. The rules of construction in Code §102 shall apply to the Plan. Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. As to contested matters, adversary proceedings, and other actions or threatened actions, this Plan and the disclosure statement related to this Plan shall not be construed as a stipulation or admission, but rather, as a statement made in settlement negotiations.

### Article 2
### Background

**2.1   Description and a Brief History of the Business Operations of the Debtor**

The Debtor is a Florida limited liability company that was formed in 2005. The Debtor's business consists of professional consulting services in the areas of geology, geophysics, petroleum engineering and petrophysics for exploration projects in the oil and gas industry.

The Debtor's principal office is located at 13506 Summerport Village Pkway, Suite 409, Windermere, FL 34786.  The Debtor also had business operations at PDVSA Petroleo, S.A., Exploration Projects, Guaraguao, Estado Anzoategui, Venezuela, Código postal 6023.

The Debtor did a substantial amount of business in Venezuela and is owed approximately $2,289,000.00 by the Venezuelan state energy company Petróleos deVenezuela, S.A. ("PdVSA"). Since 2005, the United States has imposed targeted sanctions on Venezuelan individuals and entities that have engaged in criminal, antidemocratic, or corrupt actions.  In response to increasing corruption associated with the government of Nicolás Maduro, the U.S. expanded sanctions to include financial sanctions, sectoral sanctions, and sanctions on the government.  On January 28, 2019, pursuant to Executive Order 13850, the United States Treasury determined that PdVSA was subject to U.S. sanctions.  The Executive Order froze all property and interests in property of PdVSA subject to U.S. jurisdiction and prohibited U.S. persons (companies or individuals) from engaging in transactions with PdVSA.  As a result, the Debtor was unable to collect its funds due

from PdVSA and, in turn, the Debtor did not have sufficient funds available to pay its independent contractors for services that they performed.

2.2     **Liquidation Analysis**

To confirm the Plan, the Court must find that holders of Allowed Claims and Allowed Interests who do not accept the Plan will receive at least as much under the Plan as the holder of the Allowed Claim or Allowed Interest would receive in a Chapter 7 liquidation. A hypothetical Chapter 7 liquidation analysis is attached as **Exhibit A**. The liquidation analysis shows that there will be no funds available for distribution to creditors in a hypothetical Chapter 7 liquidation unless the Chapter 7 trustee is able to collect funds from PdVSA.

2.3     **Projections with Respect to the Ability to Make Payments Under the Plan**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments. The Plan Proponent has prepared projected financial information as **Exhibit B**. The projected disposable income over the 36 month life of the Plan is $11,953.98.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections. If you do not have an attorney, you may wish to consult one.**

### Article 3
### Treatment of Administrative Expense Claims, Priority Tax Claims

| | | |
|---|---|---|
| 3.1 | Unclassified Claims | Under section § 1123(a)(1), administrative expense claims, ["gap" period claims in an involuntary case allowed under §502(f) of the Code,] and priority tax claims are not in classes. |
| 3.2 | Administrative Claims | Each holder of an administrative expense claim allowed under §503 of the Code, will be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.<br><br>The Debtor anticipates that administrative expense claims will be filed by Herron Hill Law Group, PLLC as attorneys for the Debtor and by Aaron Cohen, the Subchapter V trustee. |
| 3.3 | Priority Tax Claims | Each holder of a priority tax claim will receive on account of such claim regular installment payments in cash— |

          (i) of a total value, as of the Effective Date of the plan, equal to the allowed amount of such claim; and
          (ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303.

3.4    Statutory Fees        All statutory fees will be paid on or before the Effective Date of this Plan.

## Article 4
## Classification of Claims and Interests

Allowed Claims and Interests treated under Article 5 of the Plan are divided into the following classes, which shall be mutually exclusive:

| Class 1 | General Unsecured Claims |
|---|---|
| Class 2 | Interests of the Debtor |

## Article 5
## Treatment of Claims and Interests Under the Plan

Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1 – Allowed General Unsecured Claims** | ☒ Impaired<br><br>☐ Unimpaired | If Class 1 votes to accept the Plan, then holders of Allowed Claims in Class 1 shall receive the treatment described below under the heading *Consensual Plan Treatment*.<br><br>If Class 1 votes to reject the Plan, then holders of Allowed Claims in Class 1 shall receive the treatment described below under the heading *Nonconsensual Plan Treatment*.<br><br>a.    **Consensual Plan Treatment:**<br><br>In full satisfaction of the Allowed Class 1 Claims, each Holder of an Allowed |

| | | |
|---|---|---|
| | | Class 1 Claim shall receive two payments. For the first payment, the holders of Allowed Claims shall receive a pro rata share of $7,500.00. The second payment shall be for the balance due for each of the Allowed Claims.<br><br>The first payment shall be made on the later of (a) the first day of the month following the Effective Date, or (b) the first day of the month following the date when all objections to claims have been resolved.<br><br>The second payment shall be paid no later than fourteen (14) days after the Debtor collects sufficient funds from PDVSA to pay the balance of the Allowed Claims in full.<br><br>See section 8.7 below regarding the source of the funds for the first payment.<br><br>b.  **Nonconsensual Plan Treatment**:<br><br>The Debtor will pay unsecured creditors a Pro Rata Share of $12,000.00 (the "Base Payment"). NOTE:  The Debtor's projected disposable income over the life of the Plan is $11,953.98.<br><br>Payments will be made in twelve (12) equal quarterly payments of $1,000.00.<br><br>Payments shall commence on the later of the 15th day of the month following the Effective Date or the 15th day of the month after all objections to claims have been resolved.  Payments shall continue quarterly for eleven additional quarters. |

|  |  | In addition to the Base Payment, if the Debtor collects any funds from PDVSA during the 3-year period following the Effective Date, then holders of Allowed Claims shall receive a pro rata share of the amounts collected from PDVSA, less expenditures incurred by the Debtor that were necessary for the continuation, preservation, or operation of the business of the Debtor after the Effective Date. |
|---|---|---|
| **Class 2 – Interests of the Debtor** | ☐ Impaired<br><br>☒ Unimpaired | Holders of Allowed Interests shall retain their full equity interest in the same amounts, percentages, manner and structure as existed on the Petition Date.<br><br>No distributions will be made to holders of Allowed Interests unless and until the holder of Allowed Class 1 Claims have been paid in full. |

## Article 6
## Allowance and Disallowance of Claims

6.1 **Delay of distribution on a disputed claim**  No distribution will be made on account of a Disputed Claim unless such claim is Allowed.

6.2 **Settlement of disputed claims**  The Debtor will have the power and authority to settle and compromise a disputed claim with Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

# Article 7
# Provisions for Executory Contracts and Unexpired Leases

| | | |
|---|---|---|
| 7.1 | **Assumed executory contracts and unexpired leases** | The Debtor will assume, and if applicable assign, the following executory contracts and unexpired leases as of the Effective Date:<br><br>the Debtor's Advisory And Consulting Agreement with the Pedro and Flor Alfonsi Joint Revocable Trust. |
| 7.2 | **Rejected executory contracts and unexpired leases** | Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under section 7.1 of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.<br><br>A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than __30__ days after the date of the order confirming this Plan. |

# Article 8
# Means for Implementing the Plan

| | | |
|---|---|---|
| 8.1 | **Assumption of Liabilities** | The liability for and obligation to make the distributions required under the Plan shall be assumed by the Debtor. |
| 8.2 | **Avoidance Actions** | Any causes of action that can be asserted pursuant to Bankruptcy Code §§542, 543, 544, 545, 547, 548, 549, 550, or 553 shall be assigned to the Trustee. Any net recovery realized by the Debtor on account of such causes of action, shall be the property of the Debtor.<br><br>The Debtor is not aware of any avoidance actions. |
| 8.3 | **Submission of Disposable Income** | Pursuant to 11 U. S. C. §1190(2) the Plan commits all of the Debtor's Disposable Income to the payments under the Plan. |

| | | |
|---|---|---|
| 8.4 | **Distributions by Debtor** | Notwithstanding 11 U. S. C. §1194(b), the Debtor shall make all distributions under the Plan, including all distributions to secured creditors, priority creditors and unsecured creditors, whether the Plan is confirmed as a consensual plan or as a non-consensual plan. |
| 8.5 | **De Minimis Distributions** | No payment in an amount less than $15.00 shall be distributed to any creditor under this Plan. Accordingly, if the Pro Rata Share to be distributed to a creditor is less than $15.00, then no distribution shall be made to that creditor.  If the Pro Rata Share is greater than $15.00, but a quarterly distribution is less than $15.00, then funds not distributed shall accumulate and shall be paid whenever the accumulation to that creditor aggregates at least $15.00. |
| 8.6 | **Source of Payment of Administrative Expenses** | The Interest Holders shall contribute sufficient funds to the Debtor to pay Allowed Administrative Expenses. |
| 8.7 | **Source of the First Payment to Allowed Unsecured Claims** | If the Plan is confirmed as a consensual plan, then Interest Holders shall contribute $7,500.00 to the Debtor so that the Debtor can make the first payment to the holders of the Allowed Unsecured Claims pursuant to Article 5. |

## Article 9
## General Provisions

| | | |
|---|---|---|
| 9.1 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 9.2 | **Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity. |
| 9.3 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 9.4 | **Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of |

|       |                              |                                                                                                                                                                                                                                     |
|-------|------------------------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|       |                              | Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.                          |
| 9.5   | **Modification of Plan**     | Pursuant to 11 U. S. C. §1193(a) the Debtor reserves the right to modify the Plan at any time before confirmation. After any modification is filed with the Court, the Plan as modified becomes the Plan.                           |
| 9.6   | **Retention of Jurisdiction**| The Court shall retain jurisdiction to the extent allowed under applicable law until all Plan payments are paid by the Debtor.                                                                                                      |

### Article 10
### Termination of Service of Trustee

The Trustee's service shall terminate under the following conditions:

|      |                         |                                                                                                                                                                                                            |
|------|-------------------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 10.1 | **Consensual Plan**     | If the Court confirms the Plan as a consensual plan under §1191(a), the Trustee's service terminates when the Plan has been substantially consummated, as provided in 11 U. S. C. §1183(c)(1).             |
| 10.2 | **Non-Consensual Plan** | If the Court confirms the Plan as a non-consensual Plan under §1191(b), then the Trustee's service shall not terminate until all payments are made under the Plan and § 1194.                              |
| 10.3 | **Dismissal or Conversion** | The service of the Trustee shall terminate upon dismissal of the case or its conversion to another chapter.                                                                                             |

### Article 11
### Discharge

|      |                     |                                                                                                                                       |
|------|---------------------|---------------------------------------------------------------------------------------------------------------------------------------|
| 11.1 | **Consensual Plan** | If the Plan is confirmed under §1191(a), the Debtor shall receive a discharge under §1141(d)(1)(A) upon entry of the Confirmation Order. |

| | | |
|---|---|---|
| 11.2 | **Non-Consensual Plan** | If the Plan is confirmed under §1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in §1192 of the Code. The Debtor will not be discharged from any debt: |

1. on which the last payment is due after the first 3 years of the plan, or as otherwise provided in §1192; or

2. excepted from discharge under §523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Submitted and agreed to by:

Global Consulting, LLC

*/s/ Pedro Alfonsi*                         Dated: June 7, 2024
Pedro Alfonsi, Manager

 

Respectfully submitted by:

**Kenneth D. (Chip) Herron, Jr.**
Florida Bar No. 699403
**Herron Hill Law Group, PLLC**
P. O. Box 2127
Orlando, Florida 32802
Telephone: (407) 648-0058
Email: chip@herronhilllaw.com
      elizabeth@herronhilllaw.com

Attorneys for Global Consulting, LLC

## **CERTIFICATE OF SERVICE**

I certify that on June 7, 2024, I mailed the foregoing document by first class mail postage prepaid to the non-CM/ECF participants listed on the attached mailing matrix.

I further certify that on June 7, 2024, I emailed the foregoing document to the following persons:

| **Interested Party Served:** | **Email Address:** |
|---|---|
| Mustapha Boujana | mboujana@yahoo.com |
| Jose Ivan Diaz | Ivan.diaz@essencedeparis.com |

**Kenneth D. Herron, Jr.**
Florida Bar No. 699403

# Exhibit A

Liquidation Analysis

| Part | Asset Description pers Schedule AB[1] | Estimated Fair Maket Value | Estimated Liquidation Value in Chapter 7 |
|---|---|---|---|
| 1 | Cash and Cash Equivalents | 2,618.72 | 2,618.72 |
| 2 | Deposits and prepayments | - | - |
| 3 | Accounts Receivable | 2,291,864.34 | unknown |
| 4 | Investments | - | - |
| 5 | Inventory, excluding agricultural assets | - | - |
| 6 | Farming and fishing-related assets | - | - |
| 7 | Office furniture, fixtures and equipment; and collectibles | - | - |
| 8 | Machinery, equipment and vehicles | - | - |
| 9 | Real Property | - | - |
| 10 | Intangibles and intellectual property | - | - |
| 11 | All other assets | - | - |
| | *Total Assets at Liquidation Value* | | **2,618.72** |
| | less: Secured creditors' recoveries | | - |
| | less: Chaper 7 Trustee fee and expenses | | (654.68) |
| | less: Chapter 7 administrative / professional fees | | - |
| | less: Chapter 11 trustee expenses | | (1,000.00) |
| | less: Chapter 11 adminstrative / professional fees | | (5,000.00) |
| | **Balance for unsecured claims** | | **(4,035.96)** |

## Exhibit B

**Financial Projections**
**Projected Disposable Income Over Life of Plan (36 Mos)**

|  | *Actual Income and Expenses* | | | | | | *Projections begn with July 2024 and go forward for 36 months* | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
|  | Jan-24 | Feb-24 | Mar-24 | Apr-24 | May-24 | Jun-24 | Jul-24 | Aug-24 | Sep-24 | Oct-24 | Nov-24 | Dec-24 |
| Opening Cash Balance | 2,618.30 | 2,618.72 | 1,708.92 | 2,678.23 | 1,669.98 | 2,662.98 | 2,155.98 | 1,648.98 | 1,141.98 | 634.98 | 1,127.98 | 1,620.98 |
| Projected Income | 0.42 | 100.20 | 3,000.00 | - | 2,000.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| Projected Expenses |  | (1,010.00) | (2,030.69) | (1,008.25) | (1,007.00) | (1,007.00) | (1,007.00) | (1,007.00) | (1,007.00) | (7.00) | (7.00) | (7.00) |
| Ending Cash Balance | 2,618.72 | 1,708.92 | 2,678.23 | 1,669.98 | 2,662.98 | 2,155.98 | 1,648.98 | 1,141.98 | 634.98 | 1,127.98 | 1,620.98 | 2,113.98 |

|  | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 | Jul-25 | Aug-25 | Sep-25 | Oct-25 | Nov-25 | Dec-25 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Opening Cash Balance | 2,113.98 | 2,606.98 | 3,099.98 | 2,092.98 | 2,435.98 | 2,928.98 | 3,421.98 | 3,914.98 | 4,407.98 | 4,900.98 | 5,393.98 | 5,886.98 |
| Projected Income | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| Projected Expenses | (7.00) | (7.00) | (1,507.00) | (157.00) | (7.00) | (7.00) | (7.00) | (7.00) | (7.00) | (7.00) | (7.00) | (7.00) |
| Ending Cash Balance | 2,606.98 | 3,099.98 | 2,092.98 | 2,435.98 | 2,928.98 | 3,421.98 | 3,914.98 | 4,407.98 | 4,900.98 | 5,393.98 | 5,886.98 | 6,379.98 |

|  | Jan-26 | Feb-26 | Mar-26 | Apr-26 | May-26 | Jun-26 | Jul-26 | Aug-26 | Sep-26 | Oct-26 | Nov-26 | Dec-26 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Opening Cash Balance | 6,379.98 | 6,872.98 | 7,365.98 | 6,358.98 | 6,701.98 | 7,194.98 | 7,687.98 | 8,180.98 | 8,673.98 | 9,166.98 | 9,659.98 | 10,152.98 |
| Projected Income | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| Projected Expenses | (7.00) | (7.00) | (1,507.00) | (157.00) | (7.00) | (7.00) | (7.00) | (7.00) | (7.00) | (7.00) | (7.00) | (7.00) |
| Ending Cash Balance | 6,872.98 | 7,365.98 | 6,358.98 | 6,701.98 | 7,194.98 | 7,687.98 | 8,180.98 | 8,673.98 | 9,166.98 | 9,659.98 | 10,152.98 | 10,645.98 |

|  | Jan-27 | Feb-27 | Mar-27 | Apr-27 | May-27 | Jun-27 |
| --- | --- | --- | --- | --- | --- | --- |
| Opening Cash Balance | 10,645.98 | 11,138.98 | 11,631.98 | 10,624.98 | 10,967.98 | 11,460.98 |
| Projected Income | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| Projected Expenses | (7.00) | (7.00) | (1,507.00) | (157.00) | (7.00) | (7.00) |
| Ending Cash Balance | 11,138.98 | 11,631.98 | 10,624.98 | 10,967.98 | 11,460.98 | 11,953.98 |

**Projected disposable income over the 36 month life of the Plan is $11,953.98**

**Plan payment for Class 1 is the projected disposable income of     $11,953.98**

divided by 36 months

results in a plan payment of  $     332.06   per month

```
Label Matrix for local noticing          Alam Lembang                              Jose Diaz -
113A-6                                   Calea Dorobanti 102-110                   12 Allee des Sports
Case 6:24-bk-00353-GER                   Bloc D2, Apto 107, Sector 1               Verneuil Sur Scine, France,
Middle District of Florida               Bucarest, Romania,
Orlando
Fri Jun  7 19:34:04 EDT 2024

Raijinder Vij
207 Wilkins Crossing
Sugar Land, TX 77479-5065
```

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
(u)Jorge Acosta                          (u)Mustapha Boujana                       (u)Note: Entries with a '+' at the end of the
Conjunto Residencial Fontana Suites      Apt. 8, LE 14, rue Michel Ange, Raccine   name have an email address on file in CMECF
Torre A, Piso 9, Apto PH-A2              Casablanca, Morocco 21100                 ------------------------------------------
Calle Arismendi, Lecherias, Azoategui, V                                           Note: Entries with a '-' at the end of the
                                                                                   name have filed a claim in this case
```

```
End of Label Matrix
Mailable recipients     3
Bypassed recipients     3
Total                   6
```